Hear ye, hear ye. This Honorable Appellate Court for the 2nd District is now open. The Honorable Justice George Bridges presiding, along with Justice Catherine E. Zienoff and Justice Mary S. Shostak. The case is number 219-0776. Springbrook Partners LLC et al., Plaintiffs Appellees v. Hunt, Kaiser, Aranda & Subach Ltd. et al., Defendants Appellants. Arguing for the Appellants, Anthony G. Barone. Arguing for the Appellees, Adam R. Bowers. Good morning. Are both parties ready to proceed? Yes, Your Honor. This is Anthony Barone. I'm ready to proceed. Yes, Justice. Adam Bowers on behalf of the Appellees. Very well. Then, Mr. Barones, I mean Barones, Mr. Barone, you may proceed. Thank you, Your Honor. Your Honor, I represent Marcus Subach and his law firm, Hunt Subach. The underlying matter, Springbrook sued an attorney named Canuco for legal malpractice for missing a one-year statute of limitations applicable to a claim against the City of West Chicago. Canuco later filed a contribution claim against Subach and his firm, who was a prior attorney for Springbrook. Later, Springbrook and Canuco settled the case. The settlement agreement that they entered into assigns Canuco's contribution claim to the plaintiff, references that the plaintiff sustained at least $1.6 million in damages, only a fraction of which was paid in settlement. It expressly allows for Springbrook to seek all of those damages, the full $1.6 million, including the amounts in excess of the settlement payment from Subach, and the settlement agreement does not release Subach. After hearing and briefing, the circuit court entered a good-faith finding on the settlement. There was absolutely nothing during that proceeding that was put in the record regarding Canuco's liability. There was nothing put into the record as to the value of the assignment or the appropriateness of the settlement amount. We brought this appeal. It's our contention that the good-faith finding was entered into in error as a matter of law. There are a number of cases that we've cited in our brief that provide that a settlement is not in good faith if it conflicts with the provisions of the Contribution Act or is inconsistent with the public policies promoted by the Act. Here the settlement was contrary to the term of the Act and the policies underlying the Act in numerous respects. First of all, Section 2E of the Act only allows a settling tortfeasor to contribution if the non-settling tortfeasor's liability is extinguished by the same settlement. It has to be by the same settlement agreement. Here it was not. In fact, in contravention of the Act, not only was Subach's liability not extinguished by the settlement agreement, but shortly after the settlement agreement was entered into, Springbrook then brought a direct claim directly against Subach and his firm. In addition, the right of contribution is limited to the amount paid by the settling tortfeasor in excess of his pro rata share. So at best for the plaintiff, the contribution claim is capped by the settlement amount. Here the settlement agreement specifically provided to the contrary and actually allowed the plaintiff to recover all damages, the full $1.6 million, which was far in excess of the amount of the settlement payment. As the Supreme Court noted in Dubina, agreements such as this, which would allow for a windfall, money in excess of the settlement amount, defeats the Act's purpose of equitably distributing the burden of compensating plaintiff among the joint tortfeasors and is therefore not entitled to a good faith finding. Also, the settlement agreement here is problematic based on the rationale of the Supreme Court in the Cloudy decision. There is no evidence here at all that Canuco paid in excess of its pro rata share, as it only paid a fraction of the $1.6 million that Canuco and Springbrook agreed were the damages. The case law is clear that Springbrook has the initial burden to show the settlement is in good faith. It has to show that it paid something fair or in excess of its pro rata share. Actually, what was argued was the opposite. The rationale for the amount paid was just that that was the limits of the remaining insurance and had nothing to do with the value of the case. Again, the cases are clear that it's their burden to show the settlement amount was within the reasonable range of the settling party's fair share of liability and nothing was introduced on that point. The settlement agreement is also silent on allowing any type of setup and, in fact, specifically allows Springbrook to seek the full $1.6 million from Chubach. Finally, contrary to what the plaintiffs have contended, there's nothing moot in this case. After this appeal was filed, the plaintiffs have introduced an amendment to the settlement agreement, but that amendment was not before the court at the time the good faith finding was entered into, and the good faith finding on the current settlement agreement that is before this panel is the only good faith finding that occurred in the case. I know that you've reviewed the briefs and so on. Happy to address any issues you'd like me to comment on. Thank you, Counsel. Justice Inhofe, do you have any questions? I do. Good morning, Counsel. Good morning. Haven't the settlement proceeds been paid out already here? Correct, they were. So how is there a controversy for this court to decide? I mean, there was no stay requested. My client is not a party to the settlement agreement. Whether the two parties, the plaintiff and Canuco, decide to settle the case and pay money has nothing to do with my client. My client only has one option, and that is to oppose a good faith finding. The money that was paid accomplished the purpose of the settlement. Canuco and Springbrook have resolved all claims between them. Springbrook is not asserting that they have any additional rights against Canuco, and my client has never filed a contribution claim against Canuco. So they've settled the case by virtue of the payment. It wasn't my burden, at least I don't believe it was my burden, to seek a stay and try to interfere with their contract. My understanding of the appropriate course for my client is to oppose the assignment because the settlement agreement which gives Springbrook the assignment is in violation of the contribution act. So will you explain what relief this court can give SUBAC now? The court should overturn the circuit court's good faith finding, and if the settlement is not in good faith, there's nothing to assign,  So in doing that, then, we would not be rendering an advisory opinion. So if the good faith finding, I guess I'm having trouble because of this fact that the settlement proceeds have been paid already, and the settlement agreement has been reformed, so I'm not sure that the assignment hasn't been vacated as part of that reformed settlement agreement? No, the only thing that was reformed by virtue of the amendment was that there was a release by Springbrook of Canuco. I have not, though, had the opportunity to argue before the circuit court because they have not moved for a good faith finding on that amended settlement agreement that, as an example, that amendment was entered into without consideration. I don't believe, though, there's any advisory opinion here. The only way that a contribution claim can be assigned and Springbrook can proceed is under the contribution act, and in order for that to happen, there has to be a good faith finding. The only thing that's before this court, the amendment was not part of the record on appeal because it didn't happen until well after we filed our briefs in this matter, at least well after our original brief was filed. But I don't think that that makes that moot or that there's nothing that this court can decide. Again, if this court were to determine that the settlement agreement contravenes the contribution act and is, therefore, as a matter of law, not in good faith, then there's no assignment of the contribution claim and there's no right for Springbrook to proceed in the underlying edge. Well, I guess I won't belabor this too much longer, but if an original settlement agreement has been reformed, you're telling me that the part regarding the assignment has not changed, and so if it had been changed or has been changed, then the case would be moot, correct? I don't believe so because the Springbrook is still operating based on the good faith finding that involves the settlement agreement before this panel. Again, though, the only thing that was changed was there was an amendment to the settlement agreement releasing Subodh, but we certainly believe that that's problematic. It would not entitle them to a good faith finding under the amended agreement because, A, there was no consideration for the amendment. The consideration, in fact, had already been paid a year prior, and that the case law is clear that the release has to be in the same settlement agreement, and this amendment makes it a new agreement. They didn't characterize it as a reformation. They amended the contract. So we shouldn't wait until the trial court has made that good faith determination in the new or reformed settlement agreement before we proceed with this appeal. That would be my position, but more importantly, too, I would note that they've never asked for a good faith finding. This amendment was months ago. They've never asked for a good faith finding. I don't have the right to ask for a good faith finding on a settlement that I'm not a party to or to raise an objection to a good faith finding, again, in the settlement agreement I'm not a party to. If this court were to do nothing and want to wait, they could force me to trial in the underlying matter, never ask for a good faith finding until after the trial. Well, we're going to incur all that time and expense, and the court may not grant the good faith finding on the amended agreement. They haven't teed the issue up at all. And in the meantime, the proceeds have been paid out. I mean, I know I'm repeating myself, but that's the fact, right? Yes. Okay. Yes, Madam Justice. All right. You're absolutely right. They've been paid out, but Canuko got released, and Canuko settled the case. So Canuko got what it bargained for out of the money. Okay. Thank you. I don't have any further questions at this time. Thank you, counsel. Thank you, Justice. Counsel, this is Mary Shostak. The moot issue, this was subsequently reformed settlement, correct? It was amended, yes. I want to say it was amended about a year after. I'm sorry. It's hard to tell on the phone when I'm supposed to speak. I apologize. I know. I'm sorry. Cut me off anytime you want. That's okay. Aren't those matters, though, outside of the record? They aren't anywhere in the brief. The defendant. I'm sorry. Springbrook raised the amended settlement. I agree with Your Honor. They are outside the record. There was a motion for a good faith finding that was entered into a year before the amendment was even created. And then there was a motion by Canuko for a 304A finding. And that's what's before Your Honor is the settlement agreement upon which the court made its good faith determination. Correct. And this subsequent reform settlement agreement is mentioned, I think, in the appendix, nowhere in the brief. I think that, and I don't want to put words in counsel's mouth, I think that they've argued that it was moot because there have been, you know, subsequent proceedings in the underlying matter. And I thought they mentioned the amended settlement agreement. Yeah. Okay. So, but regarding ripeness, we still have a violation of the Contribution Act, according to your brief, correct? Yes. Okay. All right. Hold on. Let me see here. What would you call this settlement agreement that they have? It certainly violates Section C of the Contribution Act. Is it more of a, I don't know, it's not a subrogation. It's just an assignment of the whole entire litigation over to Springbrook. Or not Springbrook. It's assigned. And it purports to assign more than just the, I'm sorry, go ahead. Yeah. No. It's like Quinoco assigned the whole suit. Am I looking at that correctly? That's my contention. It's not just the contribution claim. He assigns everything. Right. And then the agreement also allows for recovery by Springbrook of amounts far in excess of what Quinoco paid to settle the case. No set off. Nothing setting it off. Correct. Well, the Contribution Act promotes settlement. But the settling party should be totally discharged from liability, correct? As well as the party that, as well as my client, because contribution is sought from my client. All right. So if they want to sue my client for contribution, which is what they're doing right now, they had to release my client in the same settlement agreement, which was the one in which the court entered the good faith finding, and they didn't. And they're clearly trying to circumvent by the settlement agreement all the purposes of the act. Again, they're not trying to limit the recovery to the amount paid by Quinoco in excess of his pro rata share. And as I said before, you know, not only that, but they then brought a direct claim against my client and are writing the full 1.6 million so that they're trying to circumvent the act, which makes it sound like an assignment of the whole case. Correct. Is there a bright line rules to what constitutes good faith? So, there is. There's numerous cases out there which say that if the settlement agreement contravenes the express provisions of the act, it's not in good faith. Anything else, my understanding is it's a totality of the circumstances. Wrongful conduct, collusion, or fraud. Correct. Yes, Your Honor. But this one, in our mind, clearly violates the act. I mean, just look at 2E. It didn't release the defendant. It didn't release Suboxone. Mm-hmm. And there's nowhere in the settlement agreement that it would reduce or set off from Quinoco's settlement? There is nothing in there that says that. I believe it's paragraph 6 specifically says that the plaintiff's reserved the right to seek, and it's a capital D damages, and damages is a defined term, and it's the full 1.6 million that they claim is their total damages in the case, which, again, far exceeds the settlement amount. Okay. Now, let me ask you this. Does the court need to rule on liability in the case before making a finding of good faith? No. I think that it is the – that the way the case law works, it is the proponent's initial burden to show – to make a preliminary showing of good faith. The circuit court has, you know, some pretty wide discretion as far as what they want to do, whether they want to have an evidentiary hearing or they don't, and then the circuit court can make the finding. The difference is that in this case, I don't think a finding of liability is required. In this case, it's just a simple fact that the settlement agreement expressly contravenes the act, so it can't be in good faith under the case law. I have no further questions. Thank you, sir. Thank you. Thank you, Justice Schuster. Counsel, I have a couple of questions. In light of the fact that the trial court has not made a finding of common liability, isn't it speculative on your part that Canoco has not paid more than its pro rata share through the settlement agreement? I certainly understand your point. I think it's not for this reason. The case law is clear that they have the burden to initially come forth and to show that the settlement amount was within a reasonable range of the settling party's fair share of liability, and there was nothing that was put in the record that addressed that. So, I don't think that they made their preliminary showing that's required before the circuit court could make a decision. Okay. I know it was Canoco who requested the 340A finding. My question to you is how is this appeal right before us when the set-offs are typically addressed at the close of the trial? I think that the agreement, relative to the set-off issue, I think that the agreement doesn't reflect any ability for settlement. But I think if Your Honor had trouble with that, the appeal is clearly ripe for the other. The simple one being the violation of 2E of the statute, that the settlement agreement does not release Zuboff. Yet, they continue to pursue a contribution claim, which they can only pursue if there's a good case finding, and Zuboff is released. But isn't it true by not granting any right to the set-off or limiting the amount that Springbrook could recover from Zuboff, and the settlement agreement doesn't disconvert this contribution claim into a direct cause of action against Zuboff? They are proceeding. They have amended to switch parties the contribution claim that Canoco brought, and the exact same contribution claim is now being brought against my client only by Springbrook as a group. They tried to bring a direct claim, but that was dismissed. So you don't see this as creating a direct claim now? I don't. My position here is that they're not entitled because the settlement agreement does not comply with the contribution act. They're not entitled to a good case finding, and the only way they can pursue their contribution claim is if they had a dispute. Okay. Thank you, Counsel. I have no further questions. Justice Inhofe, do you have any additional questions? Well, I do. In light of the last question and answer, so you believe then it's in your client's interest to prevent any contribution whatsoever by Zuboff here because of this alleged violation of the contribution act. Is that correct? Correct. The only way that they can pursue a contribution claim is pursuant to the contribution act. And they violated the act, so they're not entitled to a dispute. So if they violated the act because of the terms, and we've discussed some of this, the 2E violation, et cetera, but those shortcomings have been eliminated from the reformed agreement, would any decision in this case be res judicata in a subsequent case or the case that may still be pending? I think you said there's a separate case for this reformed agreement. So I have not been given the – I mean, I've had no opportunity in the circuit court to make those arguments. Again, they've never moved for a good-faith finding. But, you know, if the good-faith finding that the court entered is overturned by this court, I would have the right to argue if they subsequently sought a good-faith finding under the amended agreement, which they must if they want to pursue a contribution claim. I would then have the right to raise certain arguments in the circuit court as to that amended agreement. Right. But I think that any ruling that you were to make on this one would, in fact, be res judicata because this would be based on the settlement agreement that was entered into for which the good-faith finding was sought and granted. Okay. Thank you, counsel. Thank you. I have one subsequent question. I hate to keep beating a dead horse. But would it be proper for us to remand for the court to make a good-faith finding on the amended agreement without making any ruling on this case? I don't believe so because none of that is in the record. I think that they asked for the 304A finding. I actually oppose this. They asked for the 304A finding. They got the 304A finding. This is the record that I believe we're entitled to appeal on. And it's the record that we are appealing on. And I believe that there's no reason to remand it in that, as a matter of law, the settlement agreement before this panel violates the contribution act. Okay. Thank you, counsel. Nothing further, Justice Bridges. Appreciate it. Thank you, Mr. Browning. At the end of the Apollese argument, you will have an opportunity for a rebuttal. Thank you. At this time, Mr. Brower, you may begin your argument. Thank you. Good morning, justices. Good morning, counsel. May it please the court, for the record, Adam Bower is on behalf of the Apollese. I'll begin where Mr. Barone began, which is the principal argument that's been raised on appeal, namely that the settlement violated section 2A of the contribution act, and that it did not include in its terms a release of the appellants. When this case settled between Springbrook and Canuco in 2019, and a settlement agreement was submitted to the trial court for good faith finding, the settlement did not provide for a release of Subak from any direct action for one simple reason, because there was and is no direct right of action for Springbrook to release as to Subak. Mr. Subak and his law firm were made parties in this case by virtue of the third-party contribution action that Canuco filed against Subak. Springbrook contends that since there were no direct actions as to Springbrook against Subak, there was effectively nothing to release in the settlement agreement. But in light of Subak's objection and the trial court's finding, Canuco and Springbrook reformed the settlement agreement to include a release that they still consider a nullity, but a release they were always willing to give in order to obtain finality in the settlement, which the trial court accepted. Now that the release that appellants argue should have been included in the settlement agreement has been given in favor of Subak by way of reformation, and the trial court has accepted it, their argument regarding violation of section 2E is effectively mooted. So an alternative argument has been offered that the reformed agreement is objectionable because no additional consideration was given for the release. But that is the crux of the problem with the release in the first place. It was not given for any consideration. It is in essence illusory because the parties to contract always understood there was nothing to give and nothing to get in terms of release, in terms of release of Subak for direct action. Nevertheless, they wished for finality in their settlement and so went ahead and provided the release in reformation. The further inference to be drawn on the point of consideration is that aside from the gratuitous benefit obtained by Subak and being released from any direct claim, appellants provide this court with nothing by way of authority to support their position of objecting to a settlement as a non-party on the basis of formation of contract. Appellees argue that such an objection is an impermissible attempt to interfere with their freedom of contract. And while failure of consideration is a means by which a party to contract may avoid performance, it is not a means by which a non-party may collaterally attack the legal operation of agreement. Put another way, the appellants here lack standing to object to the settlement on the basis of failure of consideration. The settlement agreement with its included reform provision providing for release of Subak and accepted by the trial court serves to nullify appellant's argument as it pertains to any purported violation of Section 2E of the Contribution Act. As things now stand with the trial court, the parties await a trial on the question of common liability and pro rata share, which brings me to the balance of the principles argued by the appellants. But before I do that, I might also point out to the court that unlike the cases upon which appellants rely concerning pro rata share, specifically the Guerrero case, which the trial court referenced, pro rata share has yet to be determined here. Appellants seek to prospectively obtain a determination from this court that the provisions of the Contribution Act which pertain to pro rata share have not been satisfied. The problem is that the trial court has yet to make any of these determinations. There has been no trial on the merits, in contrast to Guerrero and others, where the appellate courts were furnished a record of both the common liability that had been determined and also the pro rata share of the various liable defendants. The appellants ask this court to determine as a matter of law that any settlement must set forth parameters in order to be accepted on a good faith basis. But as we should all well understand, settlement agreements may signify agreement as to disputed issues of fact, but settlement agreements do not supplant the trier of fact's role in resolving fact issues still disputed among the affected parties. That remains the province of the jury. Here, the appellants are well within their rights to insist upon a fair determination by the trier of fact as to pro rata share, but they have jumped the gun in suggesting that this court should do justice when the trial court has yet to act in this regard. To that end, it is noteworthy that all of the trial court's actions relative to the continuing contribution action litigation are interlocutory. They can be and have been revisited by the trial court. This demonstrates how the relief sought by appellants cannot properly be granted based upon Section 2B or 2C of the Contribution Act. Appellants in their brief cite to cases relating to a different procedural posture than the instant one, in which a determination as to pro rata share was reached by the trier of fact before coming up on appeal. Here, the appellants ask this court to dismiss them before any determination as to common liability and pro rata share has been made. And just so the record is clear, pointing to a settlement that appellants characterize in their brief as just 22% of common liability is unhelpful because it cannot be accepted as appellant's urge as a computation as to pro rata share. Even where parties might stipulate to the total amount of claim damages, as appellants seem to argue in this case, that stipulation is not determinative. To say otherwise would deprive appellants of their right to test the evidence and make their arguments at trial. As we pointed out in our brief, the 22% is nothing more than what remained under a declining limits policy, the coverage limit of which was always less than one-third of the total claim damages. The amount of the settlement with Canuco only represents what remained of that declining limits policy. The actual damages of this legal malpractice case, however, have yet to be determined by the trier of fact. And the pro rata determination, likewise, has not been determined either. Because of this, pointing to sections 2B and 2C as basis for dismissal of SUBOC or reversal of a settlement would in itself constitute error. Finally, I'd like to point out one last thing concerning waiver. This is a settlement that, as I noted earlier, involved a declining limits policy, and nearly a third of the policy limit was eroded by attorney's fees before a single deposition was even taken. Illinois public policy favors settlement outside of court, and the Contribution Act satisfies another policy objective of equitable sharing of damages. But the amount of the settlement was approved by the trial court, and that amount has been paid and distributed already. In failing to seek the correct remedy from the trial court, In failing to ask the trial court to stay the distribution of the settlement proceeds or escrow them, or reach a determination on appeal before allowing distribution, appellants have arguably waived those potential remedies, and instead seek from this court a dismissal of SUBOC or to extinguish the contribution claim, which this court should not be disposed to grant. For these reasons, as well as those outlined in our response brief, I respectfully ask the court to adjourn. And I thank you once again for your time and attention. Thank you, Counselor. Justice Zinoff, do you have any questions? Yes, I do. Good morning, Counsel. I believe I heard you say at the beginning of your argument that the reformed settlement agreement included a relief for your client from a direct claim by Springbrook. Is that correct? It included both parties released SUBOC from direct action and reserved only the contribution portion of the claim. There was never a direct action to begin with, Your Honor. Springbrook never brought one. Go ahead. Well, maybe I misheard opposing counsel, but I thought that during his argument, he indicated that there still was open the possibility of a direct claim against his client, a direct claim being brought. Justice, not under the reformed agreement and not based upon what the trial court has done. There was an amended pleading that was filed that the count that related to a direct action has been withdrawn. And now what remains is the contribution action that was assigned. Okay. Thank you for clarifying that. Certainly, any attempt to impose any or the entire liability on SUBOC in favor of the plaintiff would clearly be in excess of SUBOC's pro rata share and therefore in violation of 2B of the Contribution Act. Isn't that correct? Your Honor, Justice, we agree that the Contribution Act limits the recovery that can be had as to SUBOC to the pro rata share of what exceeds the pro rata share of Canuco. Okay. All right. I don't have any other questions at this time. Thank you. I have some questions. Thank you. Thank you, Justice. Thank you. You said that your answer to Justice Dino's last question was with respect to the amended agreement, correct? The new one. It's not really new. I mean, we can parse over terminology, Justice. It's a reflection. How about subsequent? How about subsequent? The only term that was added was the release. And frankly, it was something, as I pointed out, that the parties didn't contemplate having to do because there was nothing actually to release. But to bring it into compliance with Section 2E, they did. Yeah. Okay. Because there were absolutely no terms to the initial one. Correct? There were no terms as to release. Correct. And what was the court's justification of having a problem finding this? What was the court's justification for finding good faith? Well, I couldn't answer that, Your Honor. But I suspect that the court was persuaded with the party's representation that since there was no direct action to release in the first place, there was no need for it in the original agreement. If that was the thinking, then that would explain why the court reconsidered and allowed the reformation. Right. Did you raise a jurisdiction issue on this case at first? Well, you know, perhaps it was inartful. But our primary argument in this appeal, and we have brought a couple of motions prior to argument, was the things that remain besides the Section 2E issue, which we think has been corrected with the reformation, the things that remain are premature. They relate to determinations by the trier of fact that have not been made yet. So we think there's a... I'm sorry. Please, go ahead. But I mean, I think it's difficult to argue that this was an incorrect 304A finding because it was final as to Canuco. Yeah, I mean, Canuco asked for the language 304A, and that certainly gives and possibly even creates its own waiver issue if Subak doesn't bring the appeal. I understand. But I think that the thing that was really available for Subak to argue on appeal has been mooted by the reformation. By the subsequent reformation. Okay. And there is no question that the burden of no good faith is upon the party challenging the settlement. I think that's the correct approach, yes. I think that's what the case law says. So your first settlement, I don't know how you want to categorize it, but that certainly was in conflict with the terms of the Contribution Act. You don't deny that because then you went forward and you amended it. Well, again, we didn't originally believe that this was a situation that involved the Contribution Act in the first place. Right. There was no direct. Okay. But it was not as though the parties hadn't agreed to something new. Canuco always desired finality, and that's part of the reason for the 304. So adding the term that provides the release, that was not a give by anyone. Well, you must have thought it was somewhat of a Contribution Act because there was a good faith finding. Right. So assignment of the Contribution Action, but no direct action to release. So that's the distinction there. Well, does the court need to rely or to rule on liability and other matters in the case before making a good faith finding? Possibly. I don't know. I might have made this a lot cleaner because right now we have what amounts to a piecemeal appeal. It could defer. Well, I asked Mr Baroni and I'm going to ask you, can we or would it be proper for us to remand this case for the court to make a good faith finding with respect to the subsequent agreement? And would that resolve all of these matters and not have it piecemeal? Well, possibly, Your Honor. But you understand that I also am. Canuco is one of the Appleys in this case, and Canuco definitely has expressed that it wishes to be finally out. So, I mean, I don't want to be taken for having agreed. But if you're if you're asking about options, that's one of the options. OK, thank you. I have no further questions. Thank you, Justice. Counsel, as I read the settlement agreement, it does not limit to box liability in any way, nor does it provide any type of set off. How how can you argue it reflects a reasonable allocation of fall? Well, Your Honor, respectfully, I don't think it I mean, the allocation has not been made yet. The agreement was the agreement had one sort of guiding issue for it, which was what they remained from remained from an eroding limits policy. So determining common liability based upon the facts and the evidence in this case is still out there to for determination. It's not something that could have been could have been resolved. And even if it were resolved between the parties, it's not as though there should be any assumption that subot would have agreed. So asking the court to make a good faith finding on common liability and pro rata share with without any trial and without the agreement of subot obviously would be improper. So that's why the no attempt was made to do that. Yes, but by canoe core saying it's third party contribution claim to Springbrook. Wouldn't it allow Springbrook to seek the full amount of the liability of one point six million from subot? Well, I think if you read the Contribution Act and frankly that I don't think that issue is currently before this court, but the Contribution Act says what it says. And so I think that there's a limitation as to pro rata share that exceeds what the settling defendant has paid. And regardless of what the settlement is not withstanding what a settlement may say that's not ratified by the court at least until there have been determinations as to progress. But if we assuming this assignment does in fact do that witness be more than any pro rata share that could be claimed against subot. I don't think so your honor and again I think that's a, I think that's a, an issue for another day I think that that when that determination is made the trial court has to be guided by the principles of the Contribution Act. And there's nothing here that precludes the trial court from doing. So I don't see that there's much of a problem that may be that may be the subject of a later appeal but it's not the one here to to prospective and to to premature to to reach that kind of a conclusion. Okay, Council you argue in your brief that if this court were to find that the settlement agreement was not made in good faith this court would somehow deprived spring broke of its full negotiated consideration. Should we do just that, wouldn't it. This really be the fault of the parties that entered into the settlement agreement that ultimately violated the Contribution Act. Well your honor I would not concede that the Contribution Act has been violated what I would say was that the settlement was was drafted that in a way that that possibly didn't supply all of the terms to satisfy the Contribution Act because they were not contemplated as necessary. There is no, there was no understanding of an actual direct right of action. But as it is. No, I don't think so. Okay. Council it was your clients request for the trial court to enter the 304 order. Yet, on appeal you argued that the trial court erred and making this finding. Why shouldn't this argument be considered wave in light of the rule of invited error. Well, I'm in a bit of a, of a sticky situation there because when the settlement was, was negotiated retained counsel for Canuco was at the helm, and so we took by the agreement. We, we took Canucos claim and thereby step into their shoes. So I'd rather not say much more than that. Thank you counsel, I have no further questions, justice and offer shot that do you have any further questions. No, I do not. None. Thank you. Thank you. Thank you. Veroni, you may proceed with your rebuttal. Thank you, Your Honor. This thought that it was never contemplated that there was a direct action, and there was no reason for police to back is directly refuted by the facts of this case within a month of this settlement. And the good faith finding. Springbrook asked the court for leave to amend its complaints, and in fact added a direct action against to box, that was always the plan with respect to this settlement. They were going to proceed, both with a direct action against to box, and as well as under the contribution claim. It was only when it became clear that they had amended the complaint the trial court court brought up that they had amended the complaint. After more than 30 days after a final order was entered. And after a subsequent motion for summary judgment that that direct claim was draft was dropped. I also note that everything that they're relying on in this field is not before this court and is not of the record. What's the record is a good faith finding that was entered into based on a settlement agreement that was not amended, and everything they're arguing now occurred. Well, after this appeal was taken. In fact, it occurred well after we filed our initial brief in this map. I don't think it's proper for them to rely on something that isn't of record. Also the failure, the fact that the failure to release to back whether they contemplated a direct action or not. In the agreement, their argument is directly contrary to the euro decision, and all the cases cited there in in Guerrero they made the defendant made the same argument, they said that we that but they didn't release the non settling tort fees are because the claim was already barred by the workers compact. And the court said no, the statutes clear the Contribution Act is clear. If you want to proceed on the contribution claim, you have to release the non settling tort fees are in the exact same agreement and they didn't do that here. As, as your honor pointed out, they, they are the ones that asked for the 304 a finding relative to the argument that I had to seek a stay and interfere with the payment of the settlement proceeds again I'm not a party to that contract and they don't say any case anywhere that that would be a remedy that I could argue, nor why that would be my burden to make the argument, I objected to the good faith finding. I appealed within the timeframe they decided to pay the money out under the settlement. Anyway, so that's not my client's obligation to seek the state payment under their settlement. The common liability in this case, been determined by the settlement agreement at least that's the argument I would make that common liability is 1.6 million, but the most that they can recover is the access of the amount that the fraction of that 1.6 million that can you go paid. If it were to exceed its pro rata share and again, they only paid a fraction of what they say is the common liability in this case, I think the settlement agreement that's before this court clearly contravenes the contribution act in numerous respects. Therefore, they were not entitled as a matter of law to good faith finding right now they're proceeding against my client on a contribution claim based on the good faith finding on this original settlement agreement. And that shouldn't be a lot. If they want to seek a good faith finding under a different agreement. Then that's something that they have to ask the court to do and I get to raise the arguments that we have finally was asked what was the judges rationale. In deciding the good faith finding that it specifically set forth in my original brief. Basically, what the court determined was that he understood the argument that by not releasing the defendant that that run a run to follow up the euro decision, but the court still thought that the settlement could be in good faith in any respect. That's all I have your honors. Thank you. This is after you have any questions. No, I don't. Just a shot stick. Do you have any questions. None. Thank you. And I have no further questions. Either. The court thanks both parties for your arguments this morning. The case will be taken under advisement and a disposition will be rendered in due course. Mr. Clerk, you may close the case and terminate the proceedings. Thank you. Thank you.